973 P.2d 749

**Danny Ray AESCHLIMAN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 24054

Court of Appeals of Idaho.

Jan. 14, 1999.

Petition for Review Denied March 25, 1999.

John M. Adams, Kootenai County Chief Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for appellant. J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgenson, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgenson argued.

PERRY, Chief Judge.

Danny R. Aeschliman appeals from the district court's summary dismissal of Aeschliman's application for post-conviction relief. Aeschliman contends that he has a constitutional right to civil discovery and that there were material issues of fact raised in his application. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

Aeschliman was arrested and charged with second degree murder for the beating death of his wife. At the time of the preliminary hearing, he agreed to a plea bargain. However, Aeschliman subsequently rejected the plea agreement and entered a plea of not guilty. The state amended the charge to first degree murder by torture. Aeschliman pled not guilty, and the case proceeded to trial.

Following the first day of trial, Aeschliman entered an *Alford*[1] plea of guilty to the charge of first degree murder by torture. He was sentenced to an indeterminate life term, with eighteen years fixed. On direct appeal, this Court affirmed the sentence. *State v. Aeschliman,* 128 Idaho 60, 910 P.2d 174 (Ct.App.1995).

Aeschliman, through present counsel, filed a verified application for post-conviction relief on June 3, 1996. The application was unsupported by accompanying affidavits and asserted that Aeschliman was deprived of the effective assistance of trial counsel.[2] On July 1, 1996, the state answered and requested summary disposition of the application. On October 24, 1996, Aeschliman filed the affidavit of Joan Fisher in support of his application, and the state filed a memorandum in support of its motion for summary disposition. On October 28, Aeschliman filed a motion for leave to engage in civil discovery. On November 18, the state once again moved for summary disposition of Aeschliman's

post-conviction application. On November 25, a hearing on Aeschliman's discovery motion was held. Following that hearing, the district court provisionally denied Aeschliman's motion without prejudice. The district court invited Aeschliman to renew the discovery motion if he specified particular areas of discovery required and how those areas were relevant to the application. Aeschliman failed to do so. On August 5, 1997, the district court denied Aeschliman's discovery request and granted the state's motion for summary disposition of the post-conviction application. Aeschliman appealed.

## II.

## ANALYSIS

### A. Discovery

Aeschliman sets forth various contentions regarding discovery in post-conviction relief actions. He alleges that denying discovery to an incarcerated, indigent civil litigant, who has been appointed counsel, violates not only the Equal Protection Clause of both the United States and Idaho Constitutions, but procedural due process as well.

Discovery in the post-conviction arena is governed by I.C.R. 57(b), as promulgated by the Idaho Supreme Court, and states that an application for post-conviction relief shall be "processed under the Idaho Rules of Civil Procedure ... provided the provisions for discovery in the Idaho Rules of Civil Procedure shall not apply to the proceedings unless and only to the extent ordered by the trial court."

### 1. Post–Conviction Relief and Habeas Corpus

■ This Court has previously held that the UPCPA comprehends and replaces all other common law, statutory and other remedies, including the writ of habeas corpus, that were previously available to collaterally challenge the validity of a conviction or sentence.

---

**1.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**2.** Aeschliman also contended that his due process rights were violated when the state amended

the charge from second degree murder to first degree murder by torture. However, that issue was not raised on appeal.

*Eubank v. State*, 130 Idaho 861, 863, 949 P.2d 1068, 1070 (Ct.App.1997). Moreover, the UPCPA is an expansion of the writ of habeas corpus. *Dionne v. State*, 93 Idaho 235, 237, 459 P.2d 1017, 1019 (1969). Therefore, we consider it appropriate to look to habeas corpus jurisprudence in determining whether discovery is mandated in the post-conviction arena.

■ The Idaho Supreme Court has admonished that "the liberal rules of discovery, normally applicable in civil cases, might be inappropriate in habeas cases." *Jacobsen v. State*, 99 Idaho 45, 50, 577 P.2d 24, 29 (1978). In addition, the federal rules of civil procedure do not automatically apply to federal habeas corpus proceedings. *Harris v. Nelson*, 394 U.S. 286, 298, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Thus, inasmuch as the UPCPA is an extension of the Great Writ, we hold that the limitation of discovery under I.C.R. 57(b) in the post-conviction arena is consistent with prior common law habeas corpus procedure.

### 2. Equal protection

■ Aeschliman claims that allowing an ordinary civil litigant to conduct discovery without first obtaining authorization from the court, while denying the same to an "impoverished, incarcerated litigant," violates the Equal Protection Clause of both the United States and Idaho Constitutions. The principle underlying the Equal Protection Clause of both Constitutions is that all persons in like circumstances should receive the same benefits and burdens of the law. *Bon Appetit Gourmet Foods v. Dept. of Emp.*, 117 Idaho 1002, 1003, 793 P.2d 675, 676 (1989). In any equal protection analysis, the Court must: (1) identify the classification at issue; (2) determine the standard of review to apply; and (3) apply the standard. *See State v. Avelar*, 129 Idaho 700, 703, 931 P.2d 1218, 1221 (1997).

■ Strict scrutiny applies where the classification is based upon a suspect class (such as race) or involves a fundamental right. Idaho Courts use the "means focus" test where the classification is discriminatory on its face and clearly bears no relationship to the statute's declared purpose. *Avelar*,

129 Idaho at 703, 931 P.2d at 1221. Finally, the rational basis test applies in all other situations. *Id.* In order to survive rational basis review, the statutory classification must "bear a rational relationship to [a] legitimate government interest." *Id.*

■ In the instant case, although Aeschliman is an incarcerated individual, he is not a member of a suspect class. In addition, the granting or denial of discovery does not involve a fundamental constitutional right. Finally, I.C.R. 57(b) is not blatantly discriminatory on its face and lacking in a discernable relationship to a governmental purpose. Therefore, we utilize a rational basis test to review Aeschliman's equal protection claim.

We disagree with Aeschliman's contention that an ordinary civil litigant is entitled to unfettered discovery. Idaho Rule of Civil Procedure 26(b)(1) limits the scope of discovery to matters that are "relevant to the subject matter involved in the pending action...." Additionally, from a practical standpoint, the parties self-limit discovery because of a desire to limit costs. The opposing party can also seek a protective order in order to protect himself or herself from discovery which is engaged in to annoy, embarrass, oppress, or cause undue burden or expense. I.R.C.P. 26(c). Finally, I.R.C.P. 26(f) permits the court to sanction any discovery request not made in conformance with the discovery provisions.

■ In the post-conviction relief setting, I.C.R. 57(b) limits discovery so that the prosecution will not be inundated with discovery requests from applicants who are either unaware of the proper methods and subject areas of discovery or are simply on fishing expeditions. Moreover, in contrast to ordinary civil litigation, the typical disincentives against unfettered discovery do not exist in the post-conviction arena. First, there is little if any financial disincentive from engaging in unlimited discovery, because an applicant for post-conviction relief is usually indigent and proceeds pro se or is appointed counsel. Thus, unbridled discovery costs the applicant nothing and sanctions for discovery abuses are, for the most part, impractical. We conclude the goal of limiting discovery

through this procedural rule is legitimate. Because Rule 57(b) allows the district court to permit discovery when appropriate, the rule is rationally related to the interest of preventing unnecessary discovery in the post-conviction arena and does not deny an applicant discovery *in toto.* Therefore, we hold that I.C.R. 57(b) is not violative of the Equal Protection Clause of either the United States Constitution or the Idaho Constitution.

### 3. Procedural due process

Aeschliman also contends the denial of discovery to an applicant for post-conviction relief results in a violation of procedural due process. The test for determining whether state action violates procedural due process requires the Court to consider three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the existing procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *State v. Carr,* 128 Idaho 181, 184, 911 P.2d 774, 777 (Ct.App.1995). Procedural due process is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Carr,* 128 Idaho at 184, 911 P.2d at 777.

In an application for post-conviction relief, the private interest affected is the applicant's need to procure the information he or she requires without a discovery order from the district court. The government's interest, as recognized by Aeschliman, is to avoid the burden of responding to vexatious or unwarranted discovery requests. The district court has the ability to order discovery upon a showing that an applicant has a legitimate need for it. Thus, the risk of erroneous deprivation is minimal.

Accordingly, we hold that procedural due process is not violated by the limitation of discovery upon an applicant for post-conviction relief.

### 4. Abuse of discretion

Although the civil rules generally apply to proceedings on an application for post-conviction relief, "the discovery provisions contained in those rules are *not* applicable unless specifically ordered by the court." *Griffith v. State,* 121 Idaho 371, 375, 825 P.2d 94, 98 (Ct.App.1992), *citing* I.C. § 19–4906 and I.C.R. 57(b). Discovery during post-conviction relief proceedings is a matter put to the sound discretion of the district court. *Fairchild v. State,* 128 Idaho 311, 319, 912 P.2d 679, 687 (Ct.App.1996). Unless necessary to protect an applicant's substantial rights, the district court is not required to order discovery. *Id.* In order to be granted discovery, a post-conviction applicant must identify the type of information that he or she may obtain through discovery that could affect the disposition of his or her application for post-conviction relief. *Id.*

In the instant case, Aeschliman moved for leave to engage in civil discovery. During the hearing on the motion, there was an extensive exchange between Aeschliman's counsel and the district court regarding the purpose of the discovery motion. Counsel conceded that he had information available to him, but he wanted to do something that was more "comfortable and more fit." The district court denied, without prejudice, Aeschliman's discovery motion. The district court indicated that Aeschliman could renew his discovery motion once Aeschliman made a proper showing, specifying the issues he wished to obtain discovery on and why they were pertinent to his application. However, despite the fact that some time passed between the district court's initial denial of Aeschliman's discovery motion and its final denial of the motion and order summarily disposing of the application for post-conviction relief, Aeschliman failed to provide any specific areas of discovery which the district court could have reviewed.

We commend the district court for following the spirit of I.C.R. 57(b) by attempting to properly limit the areas of

discovery in Aeschliman's post-conviction application without summarily denying Aeschliman's need for legitimate discovery. The district court requested a specific showing, via affidavit, of the areas in which Aeschliman wished to conduct discovery and why discovery in those areas were necessary to protect Aeschliman's fundamental interests. The district court attempted to determine what discovery was necessary while not permitting interference with the orderly process of justice. Had Aeschliman submitted specific areas in which he required discovery, and why those areas were necessary, the district court could have ruled on each area of discovery requested, instead of ruling on Aeschliman's blanket discovery request. On appeal then, this Court would only need to review those specific discovery requests which were denied in light of the record supporting those requests. We encourage other courts to utilize the procedure adopted by the district court in the instant case. Requiring the applicant to set forth specific areas wherein discovery is requested, and why those areas are necessary, will assure that the discretionary authority of Rule 57(b) is properly utilized. Therefore, there is no basis for us to hold the district court abused its discretion when it denied Aeschliman's discovery motion.

**B. Ineffective Assistance of Counsel Claims**

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924–25, 828 P.2d 1323, 1329–30 (Ct.App.1992). In order to prove a claim of ineffective assistance of counsel, an applicant must show that the attorney's conduct fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). However, there is a strong presumption that trial counsel's performance falls within the wide range of "professional assistance." *Aragon*, 114 Idaho at 760, 760 P.2d at 1176. An applicant must not only show

incompetence, but also must also show the deficient conduct prejudiced his or her case. *Strickland*, 466 U.S. 668 at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Ivey v. State*, 123 Idaho 77, 80, 844 P.2d 706, 709 (1992). In the context of a guilty plea, an applicant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial, in order satisfy the second prong of the *Strickland* test. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Menchaca v. State*, 128 Idaho 649, 652, 917 P.2d 806, 809 (Ct.App.1996).

**1. Standard of review**

An application for post-conviction relief initiates a proceeding which is civil in nature. *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State*, 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct.App.1992). Summary disposition of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative, is authorized by I.C. § 19–4906. However, summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact which, if resolved in the applicant's favor, would entitle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State*, 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App. 1991); *Hoover v. State*, 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988); *Ramirez v. State*, 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct.App.1987). Summary dismissal of an application for post-conviction relief may be appropriate, even where the state does not controvert the applicant's evidence, because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App.1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct.App.1986).

On review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file; moreover, the court liberally construes the facts and reasonable inferences in favor of the nonmoving party. *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App.1993).

## 2. Right to counsel under the Idaho Constitution

Aeschliman contends that the textual differences between the Idaho Constitution and the Sixth Amendment to the United States Constitution result in an accused being afforded a "greater right to meaningful counsel" under the Idaho Constitution. Article I, § 13 of the Idaho Constitution states, in part, that the accused shall have the right to "appear and defend in person and with counsel." The Sixth Amendment to the United States Constitution states, in part, that an "accused shall ... have the assistance of counsel for his defense."

State courts may find within the provisions of their constitutions greater protection than is afforded under the federal constitution. *State v. Newman*, 108 Idaho 5, 10, n. 6, 696 P.2d 856, 861, n. 6 (1985). However, the Idaho Supreme Court has set forth no distinction between the right to counsel under the Idaho Constitution and that afforded by the United States Constitution. *See Gibson*, 110 Idaho 631, 635, 718 P.2d 283, 287 (1986); *Aragon*, 114 Idaho 758, 761 760 P.2d 1174, 1177 (1988). Therefore, we conclude that the right to counsel under the Idaho Constitution grants no greater protection in post-conviction applications than that afforded by the United States Constitution.

## 3. Presumption of prejudice

Aeschliman contends that, pursuant to *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), he is entitled to a presumption of prejudice. In *Cronic*, the Supreme Court held that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658, 104 S.Ct. 2039. The Court cited two instances where the adversarial process is presumptively unreliable: (1) where the accused is completely denied counsel and (2) where counsel is provided, but "the likelihood that *any* lawyer, even a fully competent one, could provide effective assistance is so small" that prejudice is presumed. *Cronic*, 466 U.S. at 659–60, 104 S.Ct. 2039 (emphasis added).

In the instant case, Aeschliman was afforded trial counsel. Additionally, a fully competent lawyer could provide effective assistance of counsel in this case. Therefore, we conclude that Aeschliman is not entitled to a presumption of prejudice; instead, he must set forth admissible evidence sufficient to raise a genuine issue of fact under both prongs of the *Strickland* test.

## 4. Prejudice

Aeschliman contends the *Strickland* test is not controlling in Idaho and cites *State v. Tucker*, 97 Idaho 4, 12, 539 P.2d 556, 564 (1975) for the proposition that the prejudice prong is satisfied by deficient performance that "contributed to the conviction or sentence imposed." To date, the Idaho Supreme Court has not defined the difference, if any, between the prejudice prong of *Strickland* and that of *Tucker*. *See Gibson v. State*, 110 Idaho 631, 635, 718 P.2d 283, 287 (1986); *Aragon v. State*, 114 Idaho 758, 761 760 P.2d 1174, 1177 (1988). In *Gibson*, the Supreme Court noted that the *Strickland* test and the *Tucker* test have "considerable similarity." *Gibson*, 110 Idaho at 635, 718 P.2d at 287. The Court went on to note that the Idaho Constitution potentially *can* be read to afford a broader right. However, even applying the *Tucker* formulation, we conclude Aeschliman has not met his burden to show that counsel's conduct "contributed to the conviction or sentence." Therefore, we need not define in this case the differences, if any, between the *Tucker* and *Strickland* tests. Any such defined difference would best be left for delineation by our Supreme Court.

In support of his post-conviction application, Aeschliman provided the district court with the affidavit of an attorney, Joan Fisher. In her affidavit, Fisher points to the fact that trial counsel was not "qualified to represent a client facing a potential death penalty" under the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases. However, the failure to satisfy these is not ineffective assistance of counsel per se. *State v. Porter,* 130 Idaho 772, 792, 948 P.2d 127, 147 (1997). The constitutional requirement for effective assistance of counsel "is not the key to the prison for a defendant who can dredge up a long series of examples of how the case might have been tried better." *Ivey,* 123 Idaho at 80, 844 P.2d at 709. Thus, Aeschliman must allege specific instances wherein trial counsel fell short of an objective standard of reasonableness.

Fisher avers that trial counsel's actions "fell below the minimum standard of competent assistance by failing to fully investigate the facts and research the controlling law prior to advising and permitting" Aeschliman's guilty plea. Fisher also states that by failing to obtain independent defense expert assistance for psychological evaluation, trial counsel fell below an objective standard. However, we need not determine whether Fisher's post hoc evaluation of trial counsel's performance is sufficient to have raised a genuine issue of material fact before the district court because, even if deficient performance has been shown, Aeschliman has not shown resulting prejudice.

Aeschliman must demonstrate prejudice, in that but for trial counsel's errors, he would not have pled guilty, in order to prevail on his ineffective assistance of counsel claims. *Hill,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Menchaca,* 128 Idaho 649, 652, 917 P.2d 806, 809 (Ct.App.1996). Aeschliman claims that he was denied effective assistance of counsel because trial counsel stated that his office had neither the staff nor the money to take Aeschliman's case to trial. Allegedly, because of this statement, Aeschliman subsequently entered a plea agreement wherein he agreed to plead guilty to second degree murder. However, Aeschliman then repudiated the plea agreement and was allowed to withdraw his plea. Aeschliman's case then proceeded to trial with the assistance of trial counsel. Therefore, Aeschliman did not suffer prejudice because of trial counsel's statement.

Aeschliman claims he was prejudiced by trial counsel's failure to procure expert witnesses and failure to investigate. Aeschliman also contends that but for counsel's deficient performance, Aeschliman's sentence would have been different. While this contention is properly considered in an application for post-conviction relief, *Vick v. State,* 131 Idaho 121, 952 P.2d 1257 (Ct.App. 1998), in order to succeed on an ineffective assistance of counsel claim based on trial counsel's failure to procure expert witnesses, the accused "must assert *facts* that would have been discovered by additional investigation and should offer expert testimony that would have been produced if the funds to hire the experts had been requested." *Porter,* 130 Idaho at 793, 948 P.2d at 148 (emphasis added). In the instant matter, the record is devoid of facts which would have been discovered by additional investigation. Indeed, during oral argument, Aeschliman conceded the record's hollowness regarding what facts would have been revealed by any expert assistance. Thus, we are asked to speculate that such investigation would have benefited Aeschliman; this we will not do.

We hold that Aeschliman has failed to set forth genuine issues of material fact regarding whether he suffered prejudice due to trial counsel's alleged ineffective assistance. Therefore, summary dismissal of Aeschliman's application for post-conviction relief was appropriate. *See Smith v. State,* 129 Idaho 162, 165, 922 P.2d 1088, 1091 (Ct.App. 1996).

### III.

### CONCLUSION

We hold that an applicant in the post-conviction arena has no constitutional right to discovery. In the case at bar, the district court did not abuse its discretion when it denied Aeschliman's discovery motion. Finally, Aeschliman's application and support-

ing documents failed to set forth genuine issues of fact regarding whether he was prejudiced by the alleged ineffective assistance of his trial counsel. Therefore, the order of the district court granting the state's motion for summary disposition of Aeschliman's application for post-conviction relief is affirmed.

Judge LANSING and Judge SCHWARTZMAN, concur.