69 P.3d 1064

STATE of Idaho, Plaintiff–Respondent,

v.

Robin James LePAGE, Defendant–Appellant.

Robin James LePage, Petitioner–Appellant,

v.

State of Idaho, Respondent.

Nos. 23222, 24492.

Court of Appeals of Idaho.

Feb. 11, 2003.

Review Denied May 29, 2003.

Scott E. Axline, Blackfoot, for appellant.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger II, Deputy Attorney General, Boise, for respondent. T. Paul Krueger II, argued.

PERRY, Judge.

In these consolidated cases, Robin James LePage appeals from the district court's orders denying his motion for a new trial and granting the state's motion for summary dismissal of LePage's successive application for post-conviction relief.[1] We affirm.

## I.

### FACTS AND PROCEDURE

In 1978, LePage was found guilty by a jury of murdering Kurt Cornelison. LePage was sentenced to life in prison, with a fifteen-year firearm enhancement.[2] LePage appealed from his judgment of conviction, asserting that the admission of a state witness's testimony concerning inculpatory statements allegedly made by LePage while incarcerated violated his Sixth Amendment right to counsel and that he received ineffective assistance of counsel at trial. The Idaho Supreme Court held that, although LePage's right to counsel was violated under both the Idaho and United States Constitutions, the violation[3] was harmless in view of the untainted evidence which provided overwhelming proof of LePage's guilt. *See State v. LePage*, 102 Idaho 387, 630 P.2d 674 (1981). The Court further held that LePage's claim that he was denied effective assistance of counsel based upon counsel's failure to move to suppress the witness's trial testimony was rendered moot by the Court's conclusion that the admission of such testimony was harmless error.

Following the decision in his direct appeal, LePage filed an application for post-conviction relief asserting that he was denied effective assistance of counsel at trial and that a state witness was induced by the state to perjuriously testify against LePage. LePage's application was denied and he appealed. This Court affirmed the district court's decision, concluding that those ineffective assistance claims raised on direct appeal were barred by the doctrine of res judicata and that no material issue of fact existed with respect to LePage's other claims. *See LePage v. State*, 109 Idaho 581, 710 P.2d 10 (Ct.App.1985).

In 1996, LePage filed a successive application for post-conviction relief in which he sought a new trial based on newly discovered DNA evidence showing that he was not the donor of semen that had been found in Cornelison's rectum. LePage claimed that this new evidence entitled him to a new trial and established that he was denied effective assistance of counsel at trial. The application was later amended to include an additional claim that his sentence was illegal be-

---

1. The issues raised by LePage on appeal relate only to the district court's summary dismissal of his application for post-conviction relief. LePage has not argued any issues pertaining to the district court's denial of his motion for a new trial, aside from filing a notice of appeal from that order. Consequently, as to LePage's direct appeal, we will not review it and, therefore, affirm the district court's order denying LePage's motion for a new trial. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (a party waives an issue on appeal if either authority or argument is lacking).

2. LePage was released on parole in December 1999.

3. Such a violation is known as a *Massiah* violation. *See Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

cause the state failed to notify LePage or his counsel of its intent to seek the firearm enhancement until sentencing.

The state filed a motion for summary dismissal of LePage's application, arguing that his claims were precluded by the doctrine of res judicata and that he failed to raise a material issue of fact for any of his claims. On February 20, 1997, the district court held a hearing on a number of pending motions, including an I.C.R. 35 motion to correct an illegal sentence filed by LePage and the state's motion for summary dismissal, and took them under advisement. In December 1997, LePage filed a motion for an order to obtain a fluid sample from Richard A. Leavitt and a hearing was held.[4] On January 5, 1998, the district court summarily dismissed LePage's successive application and denied LePage's motion for a fluid sample from Leavitt after concluding that the new DNA evidence was merely impeaching and that it probably would not produce an acquittal. The district court also denied LePage's Rule 35 motion.

LePage appealed. During the pendency of the appeal, the state discovered that it possessed a sample of Leavitt's DNA and stipulated to the case being remanded for testing of Leavitt's DNA to compare it to the semen found on Cornelison's body. Testing of Leavitt's fluid sample indicated that Leavitt, like LePage, was not the donor of the semen discovered in Cornelison's rectum. LePage sought to amend his post-conviction relief application and submitted a motion for discovery to review available evidence from Leavitt's murder case in an effort to tie Leavitt to Cornelison's murder. Both of LePage's motions were denied.

LePage's appeal was reinstated with this Court. At the time originally set for oral argument, LePage's appeal was again suspended by order of this Court when it was discovered that documents pertaining to the issues raised by LePage had not been included in the record. The appeal was suspended in order to allow those documents to be augmented into the record. Augmentation of

the record was completed and oral argument in this case was held on October 18, 2002. LePage raises several issues, each of which we address in turn.

## II.

### STANDARD OF REVIEW

An application for post-conviction relief initiates a proceeding which is civil in nature. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State,* 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State,* 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct.App.1992). Summary dismissal of an application pursuant to I.C. § 19–4906 is the procedural equivalent of summary judgment under I.R.C.P. 56. Like a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19–4907; *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). An application for post-conviction relief differs from a complaint in an ordinary civil action, however, for an application must contain much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant, and affidavits, records or other evidence supporting its allegations must be attached, or the application must state why such supporting evidence is not included with the application. I.C. § 19–4903. In other words, the application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.

Idaho Code Section 19–4906 authorizes summary disposition of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact which, if resolved in the applicant's favor, would enti-

---

4. Leavitt had previously admitted that he was with Cornelison hours before Cornelison's death. Leavitt was convicted of an unrelated murder in

1989. LePage has consistently asserted that he did not kill Cornelison but, rather, that Leavitt is the person who murdered Cornelison.

tle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State*, 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App.1991); *Hoover v. State*, 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988); *Ramirez v. State*, 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct.App.1987). Summary dismissal of an application for post-conviction relief may be appropriate, however, even where the state does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App.1986).

On review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file; moreover, the court liberally construes the facts and reasonable inferences in favor of the nonmoving party. *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App.1993).

## III.

## ANALYSIS

### A. Applicable Legal Standard

■ We first address LePage's contention that the district court applied an incorrect standard in analyzing his post-conviction request for a new trial based on newly discovered evidence. The district court applied the four-prong test articulated in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976).[5] The district court concluded that the new evidence merely impeached a portion of the testimony offered at trial and that the evidence would probably not produce an acquittal. LePage contends that the district court erred by applying the *Drapeau* standard in

analyzing his claim because the *Drapeau* standard, specifically the requirement that the newly discovered evidence must be of such a nature that it will probably produce an acquittal, ignores the effect that the *Massiah* violation had on his conviction. LePage also asserts that the DNA evidence weakens the other evidence relied upon by the Idaho Supreme Court in upholding his conviction. According to LePage, the district court should have analyzed his request for a new trial in his post-conviction relief application using the harmless error standard set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under the *Chapman* standard, before a federal constitutional error—in this case the *Massiah* violation—can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710.

■ Determination of the proper legal standard to be applied is a question of law over which we exercise free review. *See State v. McFarland*, 130 Idaho 358, 361, 941 P.2d 330, 333 (Ct.App.1997). The Idaho appellate courts have not had occasion to address the precise issue raised by LePage. However, in *Cootz v. State*, 129 Idaho 360, 924 P.2d 622 (Ct.App.1996), this Court applied the *Drapeau* standard in a post-conviction appeal with a procedural background analogous to the case at bar. In that case, Cootz had previously been found guilty of robbery, aggravated battery, and possession of a firearm during the commission of each crime. At Cootz's trial, the parents of Cootz's wife testified that on the night of the offenses they overheard Cootz telling their daughter that he was in trouble and that he had shot a police officer. *See State v. Cootz*, 110 Idaho 807, 718 P.2d 1245 (Ct.App.1986). Also at Cootz's trial, evidence that Cootz had previously escaped from prison was admitted and heard by the jury. On direct appeal from Cootz's judgment of conviction and sentences, this Court held that it was error to

5. A motion for a new trial based on newly discovered evidence must disclose that: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the evidence is material, not merely cumulative or im- peaching; (3) it will probably produce an acquittal; and (4) the failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *Drapeau*, 97 Idaho at 691, 551 P.2d at 978.

admit evidence concerning Cootz's escape. However, this Court further concluded that the error was harmless in view of the abundant evidence, apart from the escape evidence, which supported Cootz's conviction. Part of the evidence relied upon by this Court in holding the error harmless was the testimony of Cootz's parents-in-law that they had overheard a conversation wherein Cootz implicated himself in the crimes.

After the decision on his direct appeal, Cootz filed an application for post-conviction relief seeking a new trial based on newly discovered evidence. The newly discovered evidence submitted by Cootz in support of his application consisted, in part, of an affidavit by his wife that portions of her parents' trial testimony—including their testimony that they overheard Cootz telling her that he had shot a policeman—were perjured. *See Cootz,* 129 Idaho at 365–66, 924 P.2d at 627–28. On appeal from the denial of Cootz's application, this Court applied the *Drapeau* standard and held that the new evidence set forth in the wife's affidavit, even if sufficient to impeach portions of her parents' testimony, did not refute what was described on direct appeal as overwhelming evidence of Cootz's guilt. This Court concluded that Cootz failed to establish that the introduction of the newly discovered evidence might produce an acquittal and, therefore, Cootz was not entitled to a new trial. *Id.* at 367, 924 P.2d at 629.

In *Subilosky v. Callahan,* 689 F.2d 7 (1st Cir.1982), a case similar to the instant case, the appellate court was presented with the precise issue raised by LePage. There, the defendant had been convicted of thirteen offenses, including murder and armed robbery. At the defendant's trial, four uncounselled prior convictions were admitted to impeach the defendant's trial testimony. On direct appeal from the defendant's judgments of conviction, the state supreme court held that the error in admitting the convictions, which was of constitutional dimension, was harmless. The defendant filed a petition for writ of habeas corpus based upon the erroneous admission of his uncounselled convictions at trial, which was denied. On appeal from the denial of the defendant's petition, the federal

appellate court agreed with the state appellate court and held that the error in admitting the defendant's uncounselled convictions was harmless in view of the weight of the evidence of the defendant's guilt. Thereafter, the defendant filed a motion for a new trial in state court, on the ground that newly discovered evidence showed that he was innocent. The motion was denied, and the denial was affirmed on appeal. The defendant subsequently filed another petition for writ of habeas corpus on the basis of the newly discovered evidence, which was denied.

On appeal to the federal appellate court, the defendant argued that the introduction of his uncounselled convictions at trial so infected the fairness of the trial that all reviews of his conviction must account for that constitutional error. *See id.* at 9 n. 2. The defendant thus contended that the court was required to apply a standard of review stricter than the traditional "would probably result in a different verdict" standard, hypothesize a trial at which his allegedly newly discovered evidence was introduced, and then determine whether the admission of the uncounselled convictions was harmless in the context of that hypothetical trial. The appellate court refused, stating that it had already held that the introduction of the uncounselled convictions was harmless error and the newly discovered evidence did not affect that holding.

▮ Having reviewed the foregoing cases, we conclude that the *Drapeau* test is the appropriate legal standard to employ in evaluating LePage's request for a new trial based on the newly discovered DNA evidence. The *Chapman* harmless error standard is applied by appellate courts to errors occurring at trial in order to determine whether such errors deprived a defendant of his or her right to a fair trial. *See State v. Howell,* 137 Idaho 817, 820, 54 P.3d 460, 463 (Ct.App.2002). If we were to employ the harmless error standard in this case, as advocated by LePage, we would be required to review the *Massiah* violation anew. However, the Idaho Supreme Court has already addressed that error and determined that it was harmless in light of the overwhelming proof of LePage's guilt. LePage has offered no authority for the proposition that he may

now collaterally attack the decision in his direct appeal based on newly discovered evidence nor has he provided authority permitting this Court to review that decision. For these reasons, we are persuaded that the proper course is to analyze the issue according to the *Drapeau* standard. Because the district court followed the appropriate analytical framework, LePage has shown no error.

## B. Newly Discovered Evidence

█ We now turn to LePage's next contention that, even if the *Drapeau* standard was the correct one to employ, the district court erred in determining that he was not entitled to a new trial. The state does not contest that the DNA evidence was unknown to LePage at the time of trial and that LePage's failure to learn of the evidence was not due to his lack of diligence. The disputed issues center on whether the evidence is material and not merely impeaching and whether it would probably produce an acquittal. LePage contends that the new DNA evidence is material, not merely impeaching, because it refutes the trial testimony of John Messinese, the state's only eyewitness to the murder. LePage also claims that the new evidence directly attacks some of the evidence corroborating Messinese's testimony.

Messinese's trial testimony reveals that Messinese and LePage escaped from State Hospital South on July 23, 1977. They eventually ended up at a beer party, at which Messinese saw LePage and Cornelison arguing. Messinese and LePage then left the party and stole a pickup. Messinese and LePage subsequently encountered Cornelison hitchhiking. LePage—who was driving the vehicle at the time—shouted, "There's that son-of-a-bitch," and jumped out of the pickup. Messinese gained control of the still-moving vehicle, turned around, and drove back to the area where LePage and Cornelison were. When Messinese arrived, he heard a gunshot and saw the muzzle flash. Messinese got out of the pickup and observed Cornelison's body lying on the ground. LePage heaved Cornelison's body into the back of the pickup and instructed Messinese to sit on the floor of the cab of the pickup. Le-

Page drove for several minutes then stopped the pickup and got out. Messinese felt LePage get into the back of the pickup and then felt the pickup rocking back and forth for ten to fifteen minutes. Messinese did not testify as to what may have occurred in the back of the pickup. LePage then dumped Cornelison's body on the side of the road and Messinese and LePage drove to Montana where they eventually separated.

Although the state propounded the theory at trial that LePage sodomized Cornelison in the pickup after killing him, Messinese did not testify that LePage sodomized Cornelison. Indeed, Messinese did not offer an opinion as to what he believed LePage might have been doing in the back of the pickup when Messinese felt it rocking back and forth. Nor did Messinese testify that LePage told Messinese he sodomized Cornelison. The newly discovered DNA evidence that LePage was excluded as a donor of the semen found inside Cornelison fails to substantially refute Messinese's testimony or prove his testimony to be false, although it does eliminate one of the evidentiary elements relied upon by the state to corroborate Messinese's testimony.

In addition, LePage does not identify what other corroborating evidence is called into question by the DNA evidence or articulate how the DNA evidence directly attacks that evidence. LePage also fails to demonstrate how the new DNA evidence impacts any of the evidence relied upon by the Idaho Supreme Court in upholding his conviction on his direct appeal, where the Court stated:

In this case the state, in addition to the tainted evidence, provided the following admissible and relevant evidence that LePage committed the murder: (1) testimony of John Messinese, an eyewitness, who stated that LePage had committed the crime and gave details surrounding its commission, details which were corroborated by independent evidence, (2) testimony of an FBI expert linking fibers found on Cornelison's clothing with a blanket found in the back of the pickup which LePage had admittedly stolen on the day of the murder, (3) statements of LePage following his arrest indicating knowledge that

Cornelison's body had been sexually assaulted, although this fact had been withheld by the police prior to questioning, (4) statements of LePage following his arrest professing both dexterity in the use of handguns and an ability to destroy his fingerprints so that he could not be connected with this particular crime, (5) the statement of LePage following his arrest, and after being informed that the police were in possession of the murder weapon, that "[y]ou don't have the gun that killed the man if you took it from John," ... (6) testimony of the interviewing officers that LePage's attitude became less "cocky" after being informed that the police had the murder weapon and that semen found in the victim's anal cavity could be traced using blood-typing techniques, and (7) testimony that Cornelison had a number of twenty dollar bills in his wallet on the day of the murder, that these bills were missing when his body was subsequently discovered, and that LePage, who did not have money prior to the crime, subsequently displayed a roll of bills which he claimed to have taken from the murder victim.

*LePage,* 102 Idaho at 395–96, 630 P.2d at 682–83.

At best, the DNA evidence refutes the theory advanced by the state at trial that LePage sodomized Cornelison after he killed him. It does not refute any of the testimony presented nor does it establish that LePage did not kill Cornelison. The DNA evidence relates only to what was a collateral issue at trial. Therefore, LePage has failed to demonstrate that the newly discovered DNA evidence was material or that it would probably produce an acquittal at a new trial.

## C. Discovery

On October 16, 1996, LePage filed a motion for order of discovery, which was denied. On February 16, 2001, after this appeal had been suspended and the case remanded for testing of Leavitt's fluid sample, LePage filed a *renewed motion for discovery.* The motion was denied after the district court concluded that LePage had failed to show specific areas of discovery requested and why they were

pertinent to LePage's application for post-conviction relief. On appeal, LePage argues that the Uniform Post–Conviction Procedure Act (UPCPA), I.C. § 19–4901 *et seq.,* is unconstitutional to the extent it requires him to present evidence to support his application but denies him the ability to conduct discovery without an order of the district court because such a procedure violates his right to due process under both the Idaho and United States Constitutions. The state does not address the constitutionality of the UPCPA but, rather, contends that LePage has shown no abuse of discretion in the denial of LePage's motions for discovery.

We decline to address the merits of LePage's constitutional challenge to the UPCPA because he did not bring that issue before the district court. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave,* 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

Although the Idaho Rules of Civil Procedure generally apply to proceedings on an application for post-conviction relief, the discovery provisions contained in those rules are not applicable unless specifically ordered by the court. I.C.R. 57(b); *Aeschliman v. State,* 132 Idaho 397, 402, 973 P.2d 749, 754 (Ct.App.1999). Discovery during post-conviction relief proceedings is a matter put to the sound discretion of the district court. *Aeschliman,* 132 Idaho at 402, 973 P.2d at 754. Unless necessary to protect an applicant's substantial rights, the district court is not required to order discovery. *Id.* In order to be granted discovery, a post-conviction applicant must identify the specific subject matter where discovery is requested and why discovery as to those matters is necessary to his or her application. *See id.* at 402–03, 973 P.2d at 754–55.

In his first motion for discovery, LePage sought "any and all evidence to which he would have been entitled at the time of trial." LePage identified certain areas of discovery and asserted that obtaining such evidence was necessary in order to meet his burden under *Drapeau.* Although LePage identified specific areas of discovery request-

ed, he failed to show why those areas were pertinent to his application for post-conviction relief. Therefore, we conclude that the district court did not abuse its discretion by denying LePage's first motion for discovery.

■ In his renewed motion for discovery, LePage alleged that there was additional evidence pertinent to his case which had not been previously disclosed. LePage failed to identify precisely what that evidence was. LePage further stated that he believed there was additional evidence which should be available and was pertinent to his case, such as the report of Messinese's arrest in Montana. LePage also requested an opportunity to interview Messinese should Messinese be located. LePage claimed that this evidence would substantiate his case and discredit Messinese. Aside from Messinese's arrest report, LePage failed to specifically identify what additional evidence he sought in discovery. LePage also did not explain why any of the evidence he requested, including Messinese's Montana arrest report, was necessary. Accordingly, we conclude that LePage has not shown an abuse of discretion in the denial of his renewed motion for discovery.

## D. Ineffective Assistance of Counsel

LePage next asserts that he received ineffective assistance of trial counsel for several reasons, including that: (1) counsel failed to object to the *Massiah* violation at trial; (2) no objection was made to the foundation for the FBI expert's testimony concerning the availability of blankets containing fibers similar to the one found in the back of the pickup where Cornelison's body was thrown; (3) no motion was made for dismissal of the case based on lack of corroborative evidence; (4) no I.C.R. 35 motion was filed; (5) counsel did not file a motion for appointment of an investigator; (6) counsel failed to move for appointment of a forensic expert; and (7) counsel failed to inform the jury that Messinese identified items found at the location of Cornelison's body only after he had arrived at the scene with investigators.

■ In its decision in LePage's direct appeal, the Idaho Supreme Court held that the ineffectiveness of LePage's trial counsel for failing to object to the *Massiah* violation

was a moot issue in view of its conclusion that the admission of the state witness's testimony constituted harmless error. *See LePage,* 102 Idaho at 397–98, 630 P.2d at 684–85. Accordingly, that claim is barred from our consideration by the doctrine of res judicata.

■ With regard to LePage's remaining claims, in his first application for post-conviction relief, LePage alleged that he received ineffective assistance of trial counsel. This Court affirmed the denial of LePage's first post-conviction relief application on appeal. *See LePage v. State,* 109 Idaho 581, 582, 710 P.2d 10, 11 (Ct.App.1985). Without identifying precisely the claims of ineffective assistance brought by LePage, this Court held that LePage's claims had previously been addressed by the Supreme Court on direct appeal and were thus barred by the doctrine of res judicata. To the extent that LePage brings different claims of ineffective assistance of trial counsel in the present case than he did in his first post-conviction relief application, LePage is precluded from raising the grounds he now asserts in support of his argument because they are grounds that should have been raised in his first application for post-conviction relief but were not. Therefore, those grounds have been waived. *See* I.C. § 19–4908. To the extent they are the same, they are barred by the doctrine of res judicata. Further, we are not persuaded by LePage's contention that the new DNA evidence impacts this Court's decision on the appeal in LePage's first post-conviction proceeding because no issue asserted in that case related to LePage's alleged sodomy of Cornelison. For these reasons, we decline to address the merits of LePage's ineffective assistance of trial counsel claims.

## E. Firearm Enhancement

LePage filed his successive application for post-conviction relief on June 14, 1996. On July 26, he filed a supplemental application for post-conviction relief which included a claim that his sentence was illegal based on the state's failure to notify him of its intent to seek the sentence enhancement for use of a firearm until sentencing. LePage further

asserted that his sentence was illegal because the enhancement was not separately charged in the information, admitted to by him, or found to be true by the jury. On February 11, 1997, LePage filed an I.C.R. 35 motion to correct an illegal sentence based on the same grounds as alleged in his supplemental application for post-conviction relief.

In its order denying LePage's application for post-conviction relief, the district court did not address the alleged illegality of LePage's sentence. However, on January 7, 1998, two days after it entered its decision denying LePage's post-conviction relief application, the district court denied LePage's Rule 35 motion. On this appeal, LePage again asserts that his sentence is illegal by virtue of the firearm enhancement. LePage concedes that the language in the information charging him with discharging a firearm "at and into the head of Kurt Cornelison" may have satisfied the requirement of a separate allegation for use of a firearm. LePage contends, however, that the firearm enhancement rendered his sentence illegal because there was no specific finding by the jury that he used a firearm during commission of Cornelison's murder.

█ Pursuant to the former version of I.C. § 19–2520, any person convicted of murder, in violation of I.C. § 18–4003, who carried, displayed, used, threatened, or attempted to use a firearm while committing the crime, shall, in addition to the sentence imposed for the commission of the crime, be imprisoned in the state prison for not less than three nor more than fifteen years. *See* 1977 Idaho Sess. Laws ch. 10, § 12; *see also State v. Cardona,* 102 Idaho 668, 669, 637 P.2d 1164, 1165 (1981). At the time LePage was sentenced, there was no express requirement that the trier of fact make a specific finding of use of a firearm. In *State v. Baruth,* 107 Idaho 651, 691 P.2d 1266 (Ct.App.1984), which was decided after LePage was sentenced, this Court noted that it was not until the statute was amended in 1983 that a separate allegation of use of a firearm and a specific finding by the

trier of fact that the defendant used a firearm during commission of his or her crime were expressly required. However, this Court applied the requirements retroactively to Baruth's case after concluding that the unstated requirements nonetheless existed in the prior statute. Accordingly, we shall examine whether the requirement of a specific finding by the jury that LePage used a firearm during commission of Cornelison's murder has been satisfied.

█ Where the use of a firearm is an essential element of the crime for which a defendant is charged and the defendant is found guilty, the jury has already made its factual determination as to whether the firearm has been used and the trial court need not submit the issue to the jury for a special finding. *State v. Hernandez,* 120 Idaho 653, 659, 818 P.2d 768, 774 (Ct.App.1991). Here, the jury was instructed that an essential element of the crime of first degree murder was that LePage intentionally, willfully, deliberately and premeditatedly killed Cornelison by shooting him with a firearm. The jury thereafter found LePage guilty of first degree murder. We conclude that the requirement that LePage's use of a firearm be specifically found by the jury was satisfied in this case and that, therefore, LePage has failed to show that his sentence was illegal by virtue of the firearm enhancement.[6]

## IV.

## CONCLUSION

LePage has not asserted any issues relative to the denial of his motion for a new trial in his direct appeal. Therefore, we affirm the district court's order.

The appropriate standard to use in evaluating a request for a new trial based on newly discovered evidence in an application for post-conviction relief is the *Drapeau* standard. The district court analyzed the issue according to the proper framework, and LePage has failed to show that the district court applied the wrong standard in denying his motion for a new trial.

LePage has also failed to demonstrate that the newly discovered DNA evidence would

---

6. Due to our resolution of this issue, we further conclude that, to the extent LePage contends that trial counsel was ineffective for failing to object to the lack of a specific finding by the jury that he used a firearm during commission of the murder, such contention is without merit.

probably produce an acquittal and, therefore, he was not entitled to a new trial. There being no genuine issue of material fact and the state being entitled to judgment as a matter of law, we conclude that the district court's denial of LePage's request for a new trial in his post-conviction relief application was not error.

We do not address LePage's constitutional challenge to the UPCPA as it was not raised below. LePage did not identify specific areas of evidence wherein he sought discovery or why those areas were necessary to his application for post-conviction relief in either of his motions for discovery. Therefore, we conclude that the district court did not err by denying those motions.

With regard to LePage's ineffective assistance of counsel claims, we conclude that the issue concerning trial counsel's failure to object to the *Massiah* violation at trial is barred by the doctrine of res judicata because that was raised and addressed on LePage's direct appeal. To the extent that LePage brings different claims of ineffective assistance, we conclude that LePage is now precluded from raising those grounds because they should have been raised in his first application for post-conviction but were not. Therefore, they have been waived. To the extent he raises the same issues, they are barred by res judicata.

Finally, we conclude that the requirement of a specific finding by the jury that LePage used a firearm during commission of Cornelison's murder was satisfied in this case. To the extent LePage asserts that trial counsel was ineffective for failing to object to the lack of a specific finding by the jury in that regard, we conclude that such an assertion is without merit. The orders of the district court denying LePage's motion for a new trial and granting the state's motion for summary dismissal of LePage's successive application for post-conviction relief are affirmed.

Chief Judge LANSING and Judge Pro Tem HORTON, concur.