**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38293**

| | | |
|---|---|---|
| **KEITH ALAN OGBURN,** | ) | **2012 Unpublished Opinion No. 441** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed: April 10, 2012** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Respondent.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Judgment denying post-conviction relief, <u>affirmed</u>.

Greg S. Silvey, Star, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Keith Alan Ogburn appeals from the district court's judgment denying post-conviction relief from his convictions for attempted robbery and burglary. We affirm.

**I.**

**BACKGROUND**

In a previous appeal by one of Ogburn's co-defendants, we described the circumstances leading to Ogburn's convictions as follows:

> On January 24, 2006, three masked men wearing dark clothing, one with a blue bandana, entered the Lotus Garden restaurant brandishing firearms. They demanded money from the owner, Hong Ha, and Ha's daughter, Karen, and threatened to shoot them if they did not comply. When the men realized that Hong's wife was on the telephone with the police in another portion of the restaurant, they fled the building, got into a white Pontiac Grand Prix, and sped away.
>
> The police soon located the automobile, and a high-speed chase ensued during which one or more of the Pontiac's occupants shot at the pursuing officers.

1

The chase ended when the Pontiac's driver lost control and drove into an irrigation canal. The vehicle occupants fled on foot and avoided immediate apprehension. A short time later, however, Keith Ogburn was found lying in a field and was taken into custody. Johnny Gonzalez was arrested after he was discovered hiding in the weeds on the bank of the canal. He was sporting a blue bandana around his neck. About two and one-half hours after the search was initiated, Gerardo was seen walking down a residential street near the crash scene and was also arrested. All three of the men were wearing dark clothing and were cold, muddy and wet from the waist down.

The three men were indicted for burglary, Idaho Code section 18-1401, and attempted robbery, I.C. §§ 18-6501, -306, and the indictment sought an enhancement of their burglary sentences for use of a firearm in the course of that crime, I.C. § 19-2520. The three men were tried together and none of them testified.

*State v. Gerardo*, 147 Idaho 22, 24, 205 P.3d 671, 673 (Ct. App. 2009).

Other facts not pertinent to the issues raised in *Gerardo* are relevant here. The crimes occurred around 10 p.m. on the night in question. About forty-five minutes later, through the use of a tracking dog, Ogburn was found by police lying down in a field about one-half mile away from the location where the Grand Prix crashed into the canal. At trial, Gonzalez's girlfriend and former Lotus Garden employee, Rosemary Torres, testified that she, Gonzalez, and Ogburn ate dinner together at the restaurant earlier that evening, at about 5 p.m.

After being convicted along with Gonzalez and Gerardo, Ogburn filed an appeal challenging only the sentences that were imposed on him. In an unpublished opinion this Court affirmed. *State v. Ogburn*, Docket No. 33545 (Ct. App. June 9, 2008).

Ogburn then filed the instant action for post-conviction relief. He asserted, among other things, that his trial attorney was ineffective for failure to investigate and present alibi evidence. Following a court trial, the district court denied post-conviction relief, and Ogburn appeals.

## II.

## ANALYSIS

To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the

applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994). In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

Ogburn's alibi defense, which he contends his defense attorney should have presented, was two-fold. First, Ogburn asserted that he could not have been at the restaurant having dinner, and by implication "casing" the establishment, at 5 p.m. because he was eating dinner at his sister's house at that time and they then attended a family member's graduation ceremony. His sister supported these assertions in testimony at his post-conviction hearing.[1] Second, Ogburn asserted that he could not have been one of the three men who attempted to rob the restaurant because after the graduation ceremony he went to his girlfriend's Nampa home where he remained until, according to the girlfriend's testimony, sometime around 10 p.m. According to Ogburn's theory, this would not have allowed sufficient time for him to travel to the nearby town of Meridian where the restaurant was located in time to participate in the attempted robbery.

Ogburn asserted that his lawyer also should have presented Ogburn's own testimony in the criminal trial to explain how Ogburn happened to be in the field where he was found by

---

[1] Other family members also testified that Ogburn was present at the ceremony, but their testimony was of little importance because it did not cover the time of the 5 p.m. dinner nor the later robbery.

police not long after the robbery. According to Ogburn's post-conviction testimony, shortly before he left his girlfriend's residence, he and his girlfriend argued about his illegal drug use and she threatened to report it to his probation officer. He said that he then left the residence on foot, got "high," and walked approximately one and one-half miles to a place near where the Grand Prix had crashed. When he saw the many police vehicles present, he said, he hid because he assumed his girlfriend had made the call and that the police were looking for him.

Ogburn's defense counsel testified at the post-conviction hearing that Ogburn had admitted to him prior to trial that he was present during the attempted robbery. An Alcohol, Tobacco and Firearms agent, who did not testify at the criminal trial, also testified that Ogburn had admitted his involvement in the attempted robbery while in pretrial custody during an investigative interview concerning a different crime. The district court found both of these witnesses credible and concluded that defense counsel's performance was not deficient because to present an alibi defense would have required defense counsel to suborn perjury from Ogburn and that, had Ogburn testified, he could have been impeached at trial with his statement to the agent even if it was otherwise subject to suppression, as Ogburn contended.

Ogburn argues that the district court's reasoning is flawed because alibi testimony could effectively have been presented through the testimony of his family members and girlfriend, without the need for his own testimony. Therefore, asserts Ogburn, an alibi defense would neither have required defense counsel to suborn perjury nor have opened the door to impeachment through the agent's testimony. Ogburn also contends that the district court's ten-page memorandum decision, adopted by the court nearly verbatim from the State's written closing argument, contains numerous factual findings not supported by the evidence.

We agree that some of the district court's factual findings, adopted from the State's closing argument, are not supported by evidence. This does not mean, however, that Ogburn is entitled to relief, for if the lower court reaches the correct result, though by reliance on an erroneous theory, this Court will affirm on the correct theory. *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010). In doing so here, we need consider only the prejudice prong of the *Strickland* standard. That is, we will examine whether, assuming his attorney's performance was inadequate to meet constitutional standards, Ogburn has established prejudice by showing a reasonable probability that if the asserted alibi defense had been presented, the outcome of his trial would have been different. *Strickland*, 466 U.S. at 694.

4

Preliminarily, we must address Ogburn's contention, relying on *United States v. Cronic*, 466 U.S. 648 (1984), that prejudice in his case should be presumed because his trial counsel failed to subject the prosecution's case to meaningful adversarial testing. Whether a petitioner is required to show actual prejudice from incompetence of his defense counsel, or whether prejudice is presumed, "turns on the magnitude of the deprivation of the right to effective assistance of counsel." *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000). In *Cronic*, 466 U.S. at 658, the Supreme Court held that there are narrow circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. *See also Aeschliman v. State*, 132 Idaho 397, 404, 973 P.2d 749, 756 (Ct. App. 1999); *Boman v. State*, 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996). The *Cronic* rule encompasses three situations where courts should presume that the defendant was prejudiced by the absence or deficiency of counsel: (1) where the presence of counsel is denied altogether at a critical stage; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where counsel is called upon to render assistance under circumstances where competent counsel very likely could not (as where counsel is appointed the day before trial). *Cronic*, 466 U.S. at 659-60. *See also Bell v. Cone*, 535 U.S. 685, 695-96 (2002).

Here, the trial attorney did not entirely fail to subject the prosecution's case to meaningful adversarial testing as Ogburn asserts, for, among other things, the attorney conducted cross-examination of adverse witnesses, by which he attempted to raise reasonable doubt as to Ogburn's identity as one of the perpetrators. In *Bell*, the Supreme Court clarified that "when we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." *Bell*, 535 U.S. at 696-97. This circumstance will rarely be found, *Florida v. Nixon*, 543 U.S. 175, 190 (2004), and it is not found here.

Any defense of Ogburn, no matter how skilled the attorney, was made extremely challenging by the facts surrounding his apprehension. On a January night the Grand Prix crashed into an irrigation canal with waist-deep water. Three individuals were seen running away. Many local law enforcement officers and vehicles responded to the scene. About forty-five minutes after the robbery, through use of a tracking dog, Ogburn was found lying down flat in a field adjacent to the canal, approximately one-half mile from the crash site. Ogburn was wet and muddy from the waist down. Although he was found near a ditch and culvert, neither had

5

standing water. Ogburn's claim that his presence there at the time in question and his wet condition can all be explained as unfortunate coincidence is highly implausible.

Against these facts, Ogburn's alibi defense was not persuasive. Although precise timing of events was not well developed at the criminal trial, it appears that officers responded to the 911 call about 10:20 p.m. Ogburn's girlfriend's testimony concerning the time he left her house was equivocal; all she could say was that it "had to be close to 10:00." The distance from the girlfriend's Nampa residence to the Meridian restaurant is but a few miles. Ogburn's other "alibi" witnesses did not provide an alibi at all for the time period when the robbery was committed; they would only have contradicted the State's evidence that Ogburn had dinner at the restaurant hours before the robbery. Finally, Ogburn's two-fold alibi defense was not supported by independent witnesses, but instead was dependent on the testimony of witnesses friendly to himself, namely his sister and girlfriend. Any jury would have evaluated their testimony with recognition of possible bias.

We conclude that Ogburn's evidence did not establish that if his alibi defense had been presented there is a reasonable probability that the outcome of the trial would have been different. Therefore, he did not meet his burden to demonstrate prejudice from his attorney's failure to present such evidence.

Ogburn also asserts that the district court erred by not addressing his claim that his defense attorney was ineffective for failing to impeach a prosecution witness with her prior inconsistent statement. As noted above, Rosemary Torres testified at trial that she, Gonzalez, and Ogburn ate dinner together at the restaurant earlier on the evening of the robbery, at about 5 p.m. However, when interviewed by a detective shortly after the crimes, she said that she did not know Ogburn. On cross-examination Ogburn's attorney did not confront Torres with this inconsistent statement, but instead attempted to elicit Torres's prior statement through cross-examination of the interviewing detective. The attempt was unsuccessful because the district court sustained the State's hearsay exception. In its memorandum decision denying relief, the district court declined to address this claim because it had not been pled in Ogburn's amended petition. On appeal Ogburn asserts error, arguing that the claim was tried by the implied consent

of the parties[2] at the evidentiary hearings.  We need not resolve this issue because, whether tried by consent or not, this claim would fail--the impeachment of Ms. Torres would have been merely a component of the implausible alibi defense that we have already determined was not viable in the face of overwhelming evidence of Ogburn's guilt.  Thus, this claim fails for lack of a showing of prejudice.

## IV.
## CONCLUSION

The judgment of the district court denying post-conviction relief is affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**

---

[2]  *See* Idaho Rule of Civil Procedure 15(b); *Monahan v. State*, 145 Idaho 872, 875, 187 P.3d 1247, 1250 (Ct. App. 2008)