952 P.2d 1257

**Dianna L. VICK, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 23614.

Court of Appeals of Idaho.

Feb. 4, 1998.

---

Mosman Law Offices, Moscow, for petitioner-appellant.

Alan G. Lance, Attorney General, John C. McKinney, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge.

This is a post-conviction relief proceeding brought by Dianna Vick. The district court summarily dismissed the action on all grounds raised in the petition pursuant to I.C. § 19–4906(c). For the reasons stated herein, we reverse and remand for further proceedings.

# I.

## FACTS AND PROCEDURAL BACKGROUND

Vick pled guilty to aggravated assault on a law enforcement officer and unlawful discharge of a firearm. The district court imposed a unified twenty-year sentence with ten years fixed for the aggravated assault charge and a unified five-year sentence with three years fixed for the unlawful discharge of a firearm. The sentences were imposed to run concurrently.

Vick filed a *pro se* appeal, asserting that her sentences were unreasonable and constituted an abuse of the trial court's discretion because she was mentally ill at the time of the shootings and because she had no prior felony record. In an unpublished opinion, this Court found no abuse of the district court's discretion and upheld Vick's sentences as reasonable. *State v. Vick,* Docket No. 21585 (Idaho Ct.App. June 20, 1995) (unpublished).

On June 17, 1996, Vick filed an application for post-conviction relief under the Idaho Uniform Post–Conviction Procedure Act, I.C. §§ 19–4901 to –4911 (UPCPA). Vick's application alleged, *inter alia,* the following grounds for post-conviction relief: (1) that there exists evidence of material facts not previously presented or heard that requires vacation or reduction of her sentence, and (2) that trial counsel provided ineffective assistance by failing to present such evidence and in failing to challenge or explain other incomplete and inadequate psychological information relied upon by the district court in imposing sentence.[1]

The state filed an answer to Vick's application and also moved for summary disposition. After hearing argument on the motion, the district court granted the state's motion to summarily dismiss Vick's petition on the ground that the application failed to present disputed issues of material fact. Vick now appeals to this Court.

---

1. Numerous other allegations contained in the application and dismissed by the trial judge have not been briefed or supported by argument on appeal, and are therefore deemed waived. *See,* *e.g., State v. Zichko,* 129 Idaho 259, 263, 923, P.2d 966, 970 (1996); *Smith v. State,* 129 Idaho 162, 166, 922 P.2d 1088, 1092 (Ct.App.1996).

## II.

## STANDARD OF REVIEW

■ An application for post-conviction relief filed pursuant to the Uniform Post–Conviction Procedure Act is civil in nature and is governed by the Idaho Rules of Civil Procedure. *Pizzuto v. State,* 127 Idaho 469, 470, 903 P.2d 58, 59 (1995). A district court's "[s]ummary dismissal of an application pursuant to § 19–4906 is the procedural equivalent of summary judgment under I.R.C.P. 56." *Medrano v. State,* 127 Idaho 639, 642, 903 P.2d 1336, 1339 (Ct.App.1995). If an applicant facing a motion for summary dismissal fails to present evidence making a *prima facie* case, then summary dismissal is appropriate. *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994). Furthermore, an application for post-conviction relief must present or be accompanied by admissible evidence to avoid summary dismissal. *Medrano,* 127 Idaho at 642–43, 903 P.2d at 1339–40. Thus, the threshold issue on "appeal from the summary dismissal of an application for post-conviction relief is whether the application, affidavits, or other evidence supporting the application allege facts which, if true, would entitle the applicant to relief." *Roman,* 125 Idaho at 647, 873 P.2d at 901, *citing Whitehawk v. State,* 116 Idaho 831, 780 P.2d 153 (Ct.App.1989).

## III.

## ANALYSIS

### A. Vick's History of Mental Illness

We must first address Vick's history of mental illness and the events leading up to her judgment of conviction and sentence. Vick was hospitalized for depression and suicidal ideation in October of 1991 after she formulated a distinct plan to kill herself with a gun on a specific day. From September of 1992 to March of 1993, Vick was hospitalized three times for depression. In March of 1993, while residing in Georgia, Vick entered into individual psychotherapy with Dr. Jerome Fleischer for treatment of severe depression. Dr. Fleischer prescribed Paxil for Vick and in May of 1993, he performed an extensive psychological evaluation. In that evaluation, Vick indicated that prior to taking Paxil, she had frequent suicidal ideations and considered shooting herself with a gun. However, at the time of the evaluation, Vick had been taking Paxil for two months and found that not only did Paxil eliminate her suicidal ideations, but that her depression significantly subsided.

In September of 1993, Vick ceased her treatment with Dr. Fleischer and a short time later, she moved to Idaho. In December of 1993, when her depression worsened, Vick voluntarily admitted herself to St. Joseph Regional Medical Center in Lewiston. At St. Joseph's, Vick saw Dr. Albert Crook for psychological counseling. Dr. Crook diagnosed Vick with Adjustment Disorder with Mixed Emotional Features and Dysthymia.

On January 12, 1994, shortly after her discharge from St. Joseph's, Vick drove her boyfriend's car into downtown Lewiston and was observed waving a gun out the driver's side window. Vick fired a shot into an occupied downtown building and then shot at a police officer who was pursuing her in connection with the shooting. The officer asked Vick to put down her weapon, and upon her failure to do so, he opened fire. Vick was wounded in the incident and was taken to the hospital. According to Vick, she did not shoot directly at the officer and had no intention of harming anyone; rather, she claims that she was attempting to commit suicide by provoking the officer to shoot her to death.

In the period following Vick's release from the hospital and up until sentencing, she was incarcerated at the Nez Perce County jail. Captain Birdsell, the jail commander, requested that Dr. Michael Emery, a local clinical and forensic psychologist, monitor Vick's emotional impulses and provide crisis-oriented psychotherapy. Dr. Emery provided his services in this capacity throughout the period of Vick's incarceration at the Nez Perce County jail. His fees were paid by the Sheriff's office.

### B. Ineffective Assistance of Counsel and Evidence of Material Facts not Presented to or Heard by the District Court

■ Vick claims that her trial counsel provided ineffective assistance by failing to

present evidence of material facts to the trial judge with respect to her history of mental illness, by failing to object to misleading and inaccurate psychological information contained in the available reports, and in failing to provide the court with a full psychological evaluation. Vick asserts that as a result of counsel's failure, the trial judge imposed a harsher sentence than he would have imposed had he been given the opportunity to thoroughly review her history of mental illness and amenability to treatment. This Court has recognized that the UPCPA is an appropriate vehicle for considering claims of ineffective assistance of counsel. *Nellsch v. State*, 122 Idaho 426, 430, 835 P.2d 661, 665 (Ct.App.1992). In order to prevail on an ineffective assistance of counsel claim brought pursuant to the UPCPA, an applicant must demonstrate both "that his attorney's performance was deficient, and that he was prejudiced thereby." *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App.1995), *citing Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App.1989). To show deficient performance, a defendant must overcome the strong presumption that counsel's performance was adequate by demonstrating "that counsel's representation did not meet objective standards of competence." *Roman v. State*, 125 Idaho 644, 648–49, 873 P.2d 898, 902–03 (Ct.App.1994). If a defendant succeeds in establishing that counsel's performance was deficient, he must also "show there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 649, 873 P.2d at 903 (citations omitted).

In her application for post-conviction relief, Vick asserts that although trial counsel raised her mental illness as an issue at sentencing, he failed to provide the sentencing court with a fully completed psychological evaluation. As a result, Vick claims that her counsel's ineffective assistance prevented the trial court from adequately considering her mental illness as a mitigating factor in imposing sentence.

Following the trial judge's acceptance of her guilty plea, Vick was asked to sign a release permitting Doctors Crook and Emery to provide the court with psychological reports for sentencing purposes. The trial judge asked Vick's counsel to ensure the timely completion and submission of the reports. The trial judge then concluded: "I've already set the sentencing date and ordered a presentence investigation report and I think along with the reports of the present psychologist and psychiatrists who are treating Ms. Vick, I think it should give us a good picture before sentencing." [2]

At the time of sentencing, the trial court was privy to two psychological reports: a one-page progress note written by Dr. Crook in December of 1993 with a one-paragraph update in January of 1994, and a four-page letter submitted by Dr. Emery which, by his own admission, was incomplete. Dr. Crook's progress notes were perfunctory and it does not appear that they were considered by the district court in imposing sentence. However, Dr. Crook had conducted rather extensive examinations of Vick during the course of her stay on the mental health unit at St. Joseph's hospital in December of 1993. Copies of the extensive reports Dr. Crook drafted were not submitted for the trial court's consideration at sentencing.

Dr. Emery's report began with an explanation of his potential conflicts of interest and reveals that he first became aware of Vick through two counseling sessions with the officer/victim following the shooting. As previously noted, Dr. Emery had been asked to monitor Vick and provide crisis-oriented

---

**2.** It is unclear from the record whether the district judge specifically ordered an I.C. § 19–2522 report, which requires a thorough psychological examination. I.C. § 19–2522(3) specifies that when a report of a psychological evaluation is prepared for sentencing, it shall include:
(a) A description of the nature of the examination;
(b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;
(c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;
(d) A consideration of whether treatment is available for the defendant's mental condition;
(e) An analysis of the relative risks and benefits of treatment or nontreatment;
(f) A consideration of the risk of danger which the defendant may create for the public if at large.

counseling, with his fees paid by the Sheriff's office. He stated in his letter to the district court:

Capt. Birdsell requested that I monitor emotional and impulse control and risk of harm to herself [Vick] or to other inmates, as well as provide supportive crisis-oriented psychotherapy as needed during the time before and during legal proceedings. *I organized my contacts with Ms. Vick in terms of this request rather than as a formal psychological diagnostic study, comprehensively covering issues pertinent to sentencing.* [Emphasis added].

Dr. Emery subsequently conducted a series of interviews with Vick, but states in his letter that he "did not engage in a diagnostic study, but rather made minimal diagnostic formulations necessary to make crisis-oriented treatment decisions in a secure setting." He makes reference to Doctors Fleischer and Anderson as Vick's long-term therapists. However, Dr. Emery did not contact either doctor in preparing his report. The conclusion of this report states:

The following diagnostic formulation is based on the above information and constituted my working diagnosis as I saw her. A more comprehensive workup, typical of what I usually do in a forensic situation, would require additionally an [sic] MMPI-2, and MCMI-II, consultation with Drs. Fleischer and Anderson, review of presentence investigation, and more specific consultation with the Women's Correctional Institution regarding treatment alternatives.

Dr. Emery diagnosed Vick with recurrent major depression, psychoactive substance dependence (in remission), psychoactive substance abuse (in remission), and mixed personality disorder, with borderline and antisocial features as his primary diagnosis. He also concluded that he could not rule out further destructive behavior by Vick, with herself or others as the target, and that without successful psychotherapy, he could not guarantee that Vick would cease to be a risk to herself or to others if she were released. His report does not, however, address all the criteria mandated by I.C. § 19–2522; nor does it adequately assist the trial court in considering the mental condition factors relevant to sentencing listed under I.C. § 19–2523.

In imposing sentence, the court stated: "I have reviewed carefully the report from Dr. Emery. Dr. Emery, of course, did not do a full psychological, but his report is interesting and it's always been my—well, his report is of interest to the court and is helpful in—in sentencing." Although the court took Vick's mental health into consideration in imposing sentence, on the basis of Dr. Emery's report, the court also concluded: "There is nothing in the record to rule out future behavior of exactly this type, future behavior that would be dangerous to society."

Vick's ineffective assistance of counsel claim is *inextricably intertwined* with her claim that the psychological information potentially available to counsel and the district court constitutes evidence of material facts, not previously presented and heard, that requires vacation of the sentence in the interest of justice. I.C. § 19–4901(a)(4); *see Bure v. State,* 126 Idaho 253, 880 P.2d 1241 (Ct. App.1994); *compare State v. McFarland,* 125 Idaho 876, 876 P.2d 158 (Ct.App.1994). In support of her claim that the reports considered by the court were incomplete or otherwise misleading, and her claim of ineffective assistance of counsel, Vick submitted the affidavit of Dr. Fleischer and a copy of the full psychological evaluation he had conducted in 1993. In his affidavit, Dr. Fleischer states that Vick's "behavior improved remarkably and she became more stable" when she was taking Paxil and receiving regular therapy while in his care. Dr. Fleischer further states that Vick's failure to take her medication would detrimentally affect her health, well-being, and ability to control her suicidal tendencies, and would cause her to become increasingly disorganized and manic. Dr. Fleischer concludes his affidavit with the statement that in his professional opinion, had Vick continued with treatment and medication, she would not have engaged in the shooting incident which led to her incarceration. The trial court did not have the benefit of the Fleischer evaluation although it was readily available to Vick's counsel for use on her behalf at sentencing.

Based upon the above, we hold that summary disposition was not warranted. Vick's application, supported by documentation, raises material issues of fact as to whether she received ineffective assistance of counsel at sentencing because her attorney did not request or provide a report satisfying the requirements of I.C. § 19–2522, did not object to the imposition of sentence without the benefit of such a report, and did not submit other readily available psychological information that provided a more favorable assessment and prognosis.

Accordingly, we reverse and remand for proceedings consistent with this opinion.

LANSING, C.J., and PERRY, J., concur.