IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 34179

| DANIEL LEE EBY, | ) | |
|---|---|---|
| | ) | **2009 Opinion No. 37** |
| Petitioner-Appellant, | ) | |
| | ) | **Filed: May 15, 2009** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

Order denying motion to set aside order of dismissal, <u>reversed</u>.

Dennis A. Benjamin of Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Chief Judge

This case presents a shameful saga of neglect and inattention by appointed attorneys who represented a petitioner for post-conviction relief. This neglect ultimately resulted in the dismissal of the case for inactivity and the denial of a motion to set aside the dismissal order. Because we conclude that the petitioner himself filed an adequate, timely motion for relief from the judgment of dismissal and that the record demonstrates that such relief should have been granted, we reverse the district court's decision declining to set aside the dismissal order.

## I.

## BACKGROUND

Daniel Lee Eby was convicted of first degree murder, conspiracy to commit robbery, and attempted robbery. He appealed to this Court, and we affirmed the murder and conspiracy conviction but reversed the attempted robbery conviction because that offense merged into the murder conviction. *See State v. Eby*, 136 Idaho 534, 37 P.3d 625 (Ct. App. 2001). Eby then

filed a pro se petition for post-conviction relief on January 31, 2002, and moved for appointment of counsel to represent him in the post-conviction action. Thus began the more than five-year journey that Eby's petition was to take through the district court.

After receiving Eby's petition, the district court appointed the Kootenai County Public Defender to represent him. A conflict public defender, referred to herein as Attorney 2, was appointed approximately two weeks later, on February 13, 2002, to replace the Kootenai County Public Defender. Over four months later, on June 27, 2002, Eby wrote a letter to the district court saying he had only spoken to Attorney 2 one time and that since then the attorney's office had refused to accept Eby's calls or to reply to his letters. The judge responded with a letter stating it understood that arrangements were being made to assign new counsel. New counsel, Attorney 3, took the case in late October of 2002. In the meantime, the district court had issued its first notice of intent to dismiss Eby's petition for inactivity under Idaho Rule of Civil Procedure 40(c),[1] but had also thereafter issued an order retaining the case because new counsel was being assigned. The State had also already filed a motion for summary dismissal.

On May 27, 2003, sixteen months after Eby had filed his petition and seven months after Attorney 3 had been assigned to the case, the district court issued its second I.R.C.P. 40(c) notice of intent to dismiss for inactivity.[2] It stated the action would be dismissed as of June 16, 2003 unless Eby made a showing, by 10:00 a.m. on June 16, 2003, of adequate reason not to dismiss. Attorney 3 filed a response at 10:10 a.m. on June 16, 2003, requesting that the case be retained and proposing a timetable for his continued work on the case. Attorney 3 stated that he had read and taken notes on most of what he asserted were several thousand pages of reports and discovery, and 1,200 pages of transcripts from Eby's criminal case. He also stated that he had met with witnesses and the petitioner multiple times. Attorney 3 stated that he had spent over

---

[1]     Idaho Rule of Civil Procedure 40(c) states in part:

> In the absence of a showing of good cause for retention, any action . . . in which no action has been taken . . . for a period of six (6) months shall be dismissed. . . . At least 14 days prior to such dismissal, the clerk shall give notification of the pending dismissal to all attorneys of record, and to any party appearing on that party's own behalf, in the action or proceeding subject to dismissal under this rule.

[2]     The court had issued a similar notice on April 30, 2003, but apparently did not send it to the correct address for Attorney 3, so another such notice was issued on May 27, 2003.

2

eighty hours working on the case and that before he could prepare and file an amended petition, he would need to interview several additional witnesses and complete his review of some of the trial materials. As part of his proposed timetable, Attorney 3 anticipated filing an amended petition by September 15, 2003. The district court thereupon issued an order retaining the case. However, by December 15, 2003--three months past Attorney 3's self-designated deadline--Attorney 3 still had not filed an amended petition. The district court therefore issued its third Rule 40(c) notice, listing January 2, 2004 at 10:30 a.m. as the new threatened dismissal point. Attorney 3 filed a response at 10:38 a.m. on January 2, 2004, saying the press of other cases had unexpectedly prevented him from following his earlier timetable but that he had nevertheless put in more than forty additional hours of work on Eby's case. Attorney 3 also stated that he still had witnesses to interview, some of whom had been brought to his attention through further investigation. Attorney 3 therefore proposed a new timetable indicating that he would file an amended petition by March 15, 2004, and would be prepared for "trial setting" at that time. The district court once again retained the case.

By July 12, 2004, four months past Attorney 3's revised deadline, he had not submitted an amended petition. Thus, twenty-plus months, two Rule 40(c) notices, and two self-selected deadlines after having been assigned to the case, Attorney 3 still had not filed an amended petition. That day, the district court filed its fourth Rule 40(c) notice, the third since Attorney 3 had been assigned to the case. It set a deadline of July 29, 2004 at 10:30 a.m. for a response. Attorney 3 filed his response on July 29, 2004 at 10:46 a.m. It stated that he had largely finished his investigation, research and analysis, and that he was prepared to file the amended petition shortly, with only follow-up interviews and the obtaining of signatures remaining to be done. He stated that his delay was due in part to his "entire computer network suffer[ing] a catastrophic failure due to a virus infection" which caused the loss of weeks of work despite his precautionary measures, and also that he had been immobilized for approximately three weeks in April by a back injury. Attorney 3 proposed October 4, 2004 as the newest target date for filing an amended petition but stated that the amended petition could be filed sooner if needed. The district court retained the case again.

Four months after Attorney 3's third proposed due date of October 4, 2004, he still had not submitted the promised amended petition. The district court then issued its fifth Rule 40(c) notice on February 8, 2005, requiring a response by February 25, 2005 at 10:30 a.m. Attorney 3

filed his response at 10:44 a.m. on February 25, 2005. He asked, yet again, for more time. He stated that the amended petition was prepared and that he expected to have Eby sign the petition at noon on February 28, 2005. Attorney 3 stated he would either file the amended petition on or before March 4, 2005 or file a sworn declaration explaining why it hadn't been filed and why the case should nevertheless be retained. He did neither. On June 14, 2005, the district court dismissed Eby's petition for post-conviction relief on the basis of inactivity. Although Attorney 3 repeatedly asserted, in his varied pleas for patience, that Eby had viable claims for prosecutorial misconduct and ineffective assistance of counsel, Attorney 3 never filed an amended petition developing those claims in the nearly two years and eight months that he served as Eby's counsel.

But Eby's litigation, and his experience with disgraceful legal representation, had not yet ended. There remained nearly two years of mishandling by lawyers still to come.

On August 9, 2005, Eby wrote a letter to the district court clerk asking about the status of his petition and whether any dates or deadlines had been set in his case. Apparently, the court clerk responded by informing Eby that his petition had been dismissed two months earlier. Upon learning of the dismissal, Eby wrote to the district judge saying the clerk's letter was his first notification of the dismissal and asking whether Attorney 3 had filed anything subsequent to the dismissal, such as a notice of appeal or a motion for rehearing. Out of an apparent abundance of caution, Eby attached to the letter his own "Notice for a Re-Hearing on Order of Dismissal/Retention State Post-Conviction," as well as a "Notice of Appeal from Dismissal of Post-Conviction." The letter, "notice for rehearing," and appeal were received by the district court August 19, 2005. On September 6, 2005, the district court clerk received a letter from Eby saying he had been informed by a fellow inmate that his documents needed to be filed with the court clerk, not the judge, and that he also learned he could not yet file his notice of appeal. He therefore asked the clerk to disregard the appeal. At the same time Eby filed another "Notice for a Rehearing on order of Dismissal/Retention State Post-Conviction," which was dated August 17, 2005, a "Brief in Support of Review" and an "Affidavit in Support for Motion for Rehearing." On October 3, 2005, he filed a motion for appointment of new counsel to replace Attorney 3 and attached copies of multiple letters from Eby to Attorney 3 in which Eby had been asking Attorney 3 over a period from late 2003 to August of 2005 for updates on the case and for

4

a telephone number that worked, as the one Eby had been given to contact Attorney 3 appeared to be invalid.

The Kootenai County Public Defender was again appointed to represent Eby in November of 2005, but was replaced by Attorney 5, another conflict public defender, on March 7, 2006. Between the appointment of the Kootenai County Public Defender and the appointment of Attorney 5, Eby wrote several letters to the district court asking who his attorney was and stating he had not been contacted by anyone. This included a letter received by the court on February 15, 2006, in which Eby expressed his concern "about possibly being penalized for missing a dead line [sic] due to the fact I've yet to be contacted by counsel," and asking further, "Are there any dead lines [sic] I should be aware of?"

When Attorney 5 was appointed in March 2006, it had been nearly nine months since the dismissal of Eby's petition,[3] but it appears that Attorney 5 did not realize that the petition had been dismissed until sometime in 2007. Instead, Attorney 5 apparently believed the petition was being held in abeyance, as that is what she communicated to Eby in a May 24, 2006 letter, and she apparently was not attentive to his July 26, 2006 reply pointing out that his petition was not in abeyance but had been dismissed approximately one year earlier.

On August 22, 2006, an amended petition was submitted by Attorney 5 and accepted for filing by the court clerk. The only claim asserted in this amended petition was a claim that Eby's sentences violated the Eighth Amendment's ban on cruel and unusual punishment. The amended petition was accompanied by an "affidavit," that was more in the form of a communication from Eby to Attorney 5, indicating there was a dispute between Eby and Attorney 5 as to what issues should be raised in the amended petition. The affidavit stated,

---

[3]     This calculation is based on the March 7, 2006 notice of substitution of counsel filed with the district court stating that Attorney 5 was being substituted for an attorney in the Kootenai County Public Defender office. Attorney 5 stated at a later hearing that she had been appointed on November 17, 2005. Documents filed with the district court make no mention of Attorney 5 being appointed on that date, however, and instead show that to be the date the Kootenai County Public Defender was appointed. We base our estimation of Attorney 5's length of service on the documents filed with the district court, not the in-hearing statement of Attorney 5.

1. [Attorney 5], It is my understanding and belief that this Amended Petition for Post-Conviction Relief (Dated AUGUST 15 2006)[4] that you want me to get <u>Notarized</u>, <u>Is so you can add that issue in with the issue's that I filed with the court on (January 31 2002)</u>

2. If that is not the case <u>I would not</u> have got the said Amended Petition (Dated August 15 2006) <u>Notarized</u>

. . . .

4. I want you to include all this stuff in my Post-Conviction.

This dispute is also reflected in correspondence between Eby and Attorney 5, including a letter dated August 22, 2006, in which Attorney 5 explained to Eby why she did not include his requested ineffective assistance of counsel claim in the amended petition that had been filed that day. There, she displayed a further lack of knowledge of both the procedural history of the case and the law, saying,

> When you claim that your lawyer was ineffective, you are saying your 6th amendment right to effective assistance of counsel has been violated. As a plaintiff in a post conviction claim, you have the burden of showing by <u>clear and convincing evidence</u> that you would have been found not guilty if your lawyer(s) hadn't screwed up.[5] In your case (just like most defendants), you convicted yourself when you confessed. Your confession was admissible at trial.
>
> For you to prevail on your ineffective assistance claims, you must show how you could have been found not guilty if the favorable evidence from the police or prosecutor would have been provided. . . .
>
> . . . .
>
> Unless you provide me with facts (not feelings or thoughts or accusations) that indicate there is some merit to your argument, I will not pursue the ineffective assistance of counsel claims. I did file your Affidavit, so the Court knows that is part of your claim. I saw nothing in your file to support your

---

[4]    Eby references the amended petition filed August 22, 2006, which is dated August 15, 2006.

[5]    While we imply no view whatsoever on the viability of Eby's claim, we do note that this is an incorrect statement of the law. The actual requirement is that a petitioner show a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with a "reasonable probability" being one that is "sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (emphasis added). A different outcome could include not only an acquittal but also conviction of a lesser included offense or receipt of a lesser sentence.

ineffective assistance of counsel claims (neither did [Attorney 3] who spent more than 80 hours on your case).[6]

The dispute continued, leading to an April 3, 2007 letter from Attorney 5 to Eby stating that she intended to move to withdraw from his case.

In the meantime, the State had objected to the amended petition on August 31, 2006 on the ground that the case had already been dismissed. The record does not disclose a response by Attorney 5 to that objection, though she did file a motion for summary disposition on the amended petition five months after the State filed its objection. The motion for summary disposition was followed by a supporting brief. Neither the motion nor the brief acknowledged either the State's objection or the fact that the original petition had been dismissed twenty months earlier.

It was to be two more months before Attorney 5 first recognized on the record that the case had long since been dismissed. On April 9, 2007, she finally filed a motion to set aside the Rule 40(c) dismissal order. She did not clearly cite any legal authority for her motion, though she did argue that an attorney's failure to diligently pursue a claim, leading to the claim's dismissal, would constitute ineffective assistance of counsel if the party was prejudiced by the dismissal. She also noted that because Eby would file an ineffective assistance claim against Attorney 3, "[j]udicial efficiency and economy constitute good cause and support setting aside the inactivity dismissal." At a hearing on this motion and the motion for summary disposition, Attorney 5 again relied upon judicial efficiency and economy in her effort to get the dismissal set aside and then, in response to a question from the court, mentioned I.R.C.P. 60(b), which authorizes the court to grant relief from a judgment in certain circumstances. She said:

> I don't have my book with me, your honor, but I know that I had read case law in the I.R.C.P. 40(c) of the court that it's appropriate to move to set aside the dismissal. I think that is pursuant to I.R.C.P. 60, which is motions [sic]. But I unfortunately did not bring my book with me.

The district court offered to let Attorney 5 borrow its copy of the Idaho Court Rules to examine I.R.C.P. 60, which she did. After familiarizing herself with this rule of civil procedure, Attorney 5 argued that though her motion to set aside the dismissal had been untimely, her

---

[6] This may have been what Attorney 3 communicated to Attorney 5, but it is inconsistent with Attorney 3's affidavits where he asserted an opinion that Eby had potentially viable claims of both prosecutorial misconduct and ineffective assistance of counsel.

motion was really only duplicative of Eby's earlier pro se "Notice for a Re-Hearing on Order of Dismissal/Retention State Post-Conviction" which, she argued, constituted a timely I.R.C.P. 60(b) motion.

The district court ultimately denied the motion for two reasons. First, the court stated its belief that under *Castle v. Hays*, 131 Idaho 373, 957 P.2d 351 (1998), relief from an I.R.C.P. 40(c) dismissal can be granted only through an I.R.C.P. 11(a)(2)(B) motion for reconsideration or a direct appeal, with respective limitation periods of fourteen days and forty-two days from the dismissal order. Second, the court stated that even if a motion under Rule 60(b) were permissible and Eby's motion timely under that rule, Eby had not shown a justification for relief under Rule 60(b).

Eby now appeals to this Court, challenging the denial of his August 19, 2005 pro se "Notice for a Re-Hearing on Order of Dismissal/Retention State Post-Conviction," which he characterizes as substantively a timely Rule 60(b) motion for relief from the June 14, 2005 order dismissing his petition and the follow-up motion filed by Attorney 5 in April 2007.

## II.

## ANALYSIS

Actions for post-conviction relief brought pursuant to I.C. § 19-4901, *et seq.*, are civil in nature and, with limited exceptions, are governed by the Idaho Rules of Civil Procedure. Idaho Criminal Rule 57(b); *Pizzuto v. State*, 127 Idaho 469, 470, 903 P.3d 58, 59 (1995); *Ross v. State*, 141 Idaho 670, 671, 115 P.3d 761, 762 (Ct. App. 2005) (applying I.R.C.P. 60(b) in a post-conviction action); *Vick v. State*, 131 Idaho 121, 123, 952 P.2d 1257, 1259 (Ct. App. 1998); *State v. LePage*, 138 Idaho 803, 810, 69 P.3d 1064, 1071 (Ct. App. 2003). Idaho Rule of Civil Procedure 60(b) specifies permissible grounds for relief from a final judgment and time limits for a motion seeking such relief. It says in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3) and (6) not more than six (6) months after the judgment, order, or proceeding was entered or taken.

I.R.C.P. 60(b).[7]  A litigant thus may file a motion under this rule to set aside a final judgment within a "reasonable time," limited in some situations to six months, after entry of the judgment.

We therefore must determine whether Eby timely filed such a motion.  We conclude that he did.  Attorney 5's motion on Eby's behalf to set aside the dismissal was clearly untimely, since it was filed, for no appropriate reason, nearly two years after Eby's petition had been dismissed.  However, the "Notice for a Re-Hearing on Order of Dismissal/Retention State Post-Conviction" that Eby himself sent to the district judge in August 2005 and refiled with the district court clerk in September 2005 was timely under I.R.C.P. 60(b), since the time at which it was filed--shortly after Eby personally learned of the dismissal--was both reasonable and within six months of the dismissal order.  Though Eby's motion was inartful and did not cite to I.R.C.P. 60(b), it is clear that he was requesting the type of relief authorized by Rule 60(b)--relief from the judgment of dismissal.  Eby's motion was not acted upon, and it remained pending until Attorney 5 formalized this request by filing a follow-up motion to set aside the dismissal.  Attorney 5 ultimately brought the court's attention to Rule 60(b) as the authority for the requested action and argued that relief was warranted because the dismissal order resulted from the neglect of Attorney 3 who failed, again and again, to take the necessary steps to develop and present Eby's post-conviction claims.

We conclude that Attorney 5's argument, which is amply supported by the record, makes a sufficient showing to justify relief from the dismissal order.  This Court has noted that "failing to provide a post-conviction applicant with a meaningful opportunity to have his or her claims presented may be violative of due process." *Schwartz v. State*, 145 Idaho 186, 189, 177 P.3d 400, 403 (Ct. App. 2008) (citing *Hernandez v. State*, 133 Idaho 794, 799, 992 P.2d 789, 794 (Ct. App. 1999)); *Abbott v. State*, 129 Idaho 381, 385, 924 P.2d 1225, 1229 (Ct. App. 1996); *Mellinger v. State*, 113 Idaho 31, 35, 740 P.2d 73, 77 (Ct. App. 1987) (Burnett, J., concurring)).  If incompetent representation by appointed post-conviction counsel results in the loss of such a meaningful opportunity to present the post-conviction claims, the right to due process may be jeopardized.  *Schwartz*, 145 Idaho at 189, 177 P.3d at 403.  The Idaho courts have long held that deficient representation by counsel in an initial post-conviction proceeding, that causes a claim to

---

[7]     The version of I.R.C.P. 60(b) quoted here is the one that was in effect when Eby filed his "Notice of a Re-Hearing on Order of Dismissal/Retention State Post-Conviction" in 2005.  I.R.C.P. 60(b) has been subsequently amended.

be inadequately presented to the court, constitutes a "sufficient reason" to allow assertion of the same claim in a subsequent post-conviction petition pursuant to I.C. § 19-4908.[8] *Palmer v. Dermitt*, 102 Idaho 591, 595-96, 635 P.2d 955, 959-60 (1981); *Schwartz*, 145 Idaho at 189, 177 P.3d at 403; *Griffin v. State*, 142 Idaho 438, 441, 128 P.3d 975, 978 (Ct. App. 2006); *Baker v. State*, 142 Idaho 411, 420, 128 P.3d 948, 957 (Ct. App. 2005); *Hernandez*, 133 Idaho at 798-800, 992 P.2d at 793-95; *Wolfe v. State*, 113 Idaho 337, 339, 743 P.2d 990, 992 (Ct. App. 1987). In our view, if an attorney's neglect that caused the loss of an opportunity to present a post-conviction claim justifies allowing a successive petition to be filed reasserting the same claim, it also justifies setting aside a dismissal order to reactivate the original post-conviction action pursuant to Rule 60(b). Here, Eby was subjected to neglectful appointed attorneys over the course of more than five years. Throughout this time he tried to stay abreast of the proceedings and push the attorneys along to the best of his ability as an incarcerated person with little knowledge of the law. The mishandling of Eby's post-conviction action eventually resulted in its dismissal. We hold that these circumstances demonstrate "mistake, inadvertence, surprise, or excusable neglect" calling for relief under Rule 60(b)(1), *see Idaho State Police ex rel. Russell v. Real Property Situated in County of Cassia*, 144 Idaho 60, 62, 156 P.3d 561, 563 (2007), or "other reason justifying relief from the operation of the judgment" under I.R.C.P. 60(b)(6).

The State argues, however, and the district court held, that I.R.C.P. 60(b) does not apply in an action that has been dismissed for inactivity under Rule 40(c). For this proposition the

---

[8] Idaho Code § 19-4908 provides:

> All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

We note that when Attorney 5 was appointed, rather than attempting to amend a petition that had long since been dismissed, she could have filed a second petition for post-conviction relief pursuant to this statute, predicated on the fact that Eby's initial post-conviction claims were inadequately presented due to the neglect of Attorney 3.

10

State and the district court have relied upon *Castle*, 131 Idaho 373, 957 P.2d 351. *Castle* was a tort action that had at one point been dismissed for inactivity pursuant to I.R.C.P. 40(c) and was later reinstated before being dismissed again. As part of its analysis, the Idaho Supreme Court addressed the district court's authority to reinstate the action after the Rule 40(c) dismissal:

> It has long been recognized that a formal order dismissing an action is in effect a final judgment that puts an end to the suit. Relief from such an order is limited. A party who disagrees with such an order may, within fourteen days, seek reconsideration in the trial court under I.R.C.P. 11(a)(2)(B), or the party may file an appeal within forty-two days to obtain appellate review of the dismissal order as provided in Idaho Appellate Rule 11(a)(1). . . . Here, however, the plaintiff neither filed a motion for reconsideration within fourteen days after the dismissal was entered, nor did the plaintiff file a notice of appeal within forty-two days. The plaintiff instead filed a motion to reinstate the case well after the time had expired for seeking reconsideration or for invoking appellate review.

*Castle*, 131 Idaho at 374, 957 P.2d at 352 (citations omitted). The Court went on to conclude that because the plaintiff's motion to reinstate the action was not timely, the district court had no authority to grant the motion. *Id.*

We acknowledge that *Castle* can easily be read to hold that only two vehicles are available to seek relief from a Rule 40(c) dismissal--a motion under I.R.C.P. 11(a)(2)(B), or an appeal. We note, however, that the *Castle* opinion never mentions, considers, nor expressly rejects the alternative of a motion brought under I.R.C.P. 60(b). Because *Castle* does not address the potential application of Rule 60(b), we will not interpret the opinion to abrogate that rule which, by its plain terms, authorizes motions to set aside any final judgment in any civil action.[9]

We therefore reverse the order denying Eby's Rule 60(b) motion to set aside the dismissal, remand the case for further proceedings, and order that Eby be appointed new counsel on remand if he so requests.

Judge GUTIERREZ **CONCURS.**

Judge PERRY, **DISSENTING**

I respectfully dissent. The Supreme Court's decision in *Castle* specifically limits the relief available in this instance. Although a harsh result in a situation such as Eby's, whose neglectful attorneys provided virtually no assistance, I disagree with the majority that *Castle*

---

[9] As a matter of clarification, we note that I.R.C.P. 11(a)(2)(B), referenced in *Castle*, appears on its face to apply only to motions for reconsideration of interlocutory orders and post-judgment orders, neither of which would seem to include an I.R.C.P. 40(c) order of dismissal.

11

does not control the outcome here.  The Supreme Court, upon review of this case, can overrule *Castle* and extend Rule 60(b) application to a Rule 40 dismissal if it so chooses.